IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

PAULA A. H. NEWBERRY,

    Plaintiff,

vs.                                                 No. 13-2934-JPM-dkv

PINNACLE AIRLINES,

    Defendant.

_____

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

_____

On November 27, 2013, the plaintiff, Paula A. H. Newberry ("Newberry"), filed a *pro se* Complaint under Title VII of the Civil Rights Act of 1964, (*Pro Se* Compl., D.E. 1), accompanied by a motion seeking leave to proceed *in forma pauperis*, (D.E. 2). On December 3, 2103, the court issued an order granting Newberry leave to proceed *in forma pauperis*. (D.E. 3.) This case has now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, April 29, 2013. For the reasons that follow, it is recommended that Newberry's complaint be dismissed in full for failure to state a claim upon which relief can be granted.

# I. PROPOSED FINDINGS OF FACT

To initiate this action, Newberry filled out and filed a court-supplied form complaint entitled "Complaint under Title VII of the Civil Rights Act of 1964." In the complaint, Newberry alleges that Pinnacle Airlines ("Pinnacle") discriminated against her by terminating her employment because of her need for special medication prescribed by her physician. The form complaint provides a list of possible bases for the alleged discrimination: race, color, sex, religion, national origin. She did not choose a basis for the alleged discrimination as required in paragraph 9. (*Pro Se* Complaint, D.E. 1 ¶ 9.) She listed August, 2010, as the date of the alleged discrimination. (*Id.* ¶ 5.) In the space provided on the form complaint for stating the circumstances under which the alleged discrimination occurred, Newberry wrote:

> Mrs. Newberry had just graduated from the flight attendant training classes, passed all exams and met all requirements. However, during one of the classes in training, the Alcohol & Drug Manager came to explain Pinnacle Airlines' Drug and Alcohol Policy for all employees. He stated that the Pinnacle Airlines would randomly conduct drug and alcohol tests during an employees [sic] employment. He also said if any employee had reason to believe their prescription medication would be questionable or was detected on the test, that it would be best to make Pinnacle aware so it would already be in that employee's file, therefore if it did show up, the Drug and Alcohol department would already be aware of it. Yet, once I received my wings to fly and reported a prescribed medication, I was immediately SUSPENDED W/PAY, forced to go to my doctor and get a statement from her stating WHY I was taking the medication, and provide this

> documentation within a certain time frame. After receiving the necessary paperwork, Pinnacle still was not satisfied. They actually instructed me to TELL my physician to lower the dosage, then let them know if the medication was safe. She wrote to them stating it was; however, they were still NOT satisfied w/my physician's determination. I was forced to fly to their OWN Pinnacle Airlines doctor in Minneapolis, MN as if my doctor was incompetent. Their doctor demanded all of my health records, did a physical on me, asked me questions like I was a criminal and then instructed my physician to change my medication. My doctor refused based on the fact that she had been my doctor for the past 5-6 years, knew my medical history, and could not jeopardize my health to appease his demands. Because their doctor made a determination that I was not "fit" for duty even though I passed all their tests (physical) and (mental) showing I was "fit" for duty.

(*See id.* ¶ 10.)

Newberry alleges in the complaint that she filed charges against Pinnacle with the Equal Employment Opportunity Commission on November 2, 2013, (*id.* ¶ 7) and that she received a Notice of Right to Sue from the EEOC on August 29, 2013 (*id.* ¶ 8).[1] Newberry failed to attach a copy of the Notice of Right to Sue as instructed on the complaint form. For relief, Newberry seeks "pay plaintiff salary (for 3 years), $30,000 pain and suffering, causing me to go into bankruptcy, and compensation for my letting go of my singing career to work at Pinnacle." (*id.* ¶ 12.)

II.  PROPOSED CONCLUSIONS OF LAW

---

[1] Based on Newberry's assertion of receiving the Right to Sue Notice on August 29, 2013, it appears Newberry incorrectly put "2013" in the blank indicating the date she filed charges with EEOC instead of "2012."

A.  28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2).  The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues.

This report and recommendation will constitute the court's screening.  The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

>   (I)   is frivolous or malicious;
>
>   (ii)  fails to state a claim on which relief may be granted; or
>
>   (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

B.  Standard of Review for Failure to State a Claim

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  "A complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel &*

*Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Ordinarily, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). The Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), makes clear that employment discrimination plaintiffs are not required to plead specific facts establishing the elements of a *prima facie* case

under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In so holding, the Supreme Court emphasized that "[t]he *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement, 'and the McDonnell Douglas framework is inapplicable where a plaintiff has direct evidence of discrimination." *Swierkiewicz*, 534 U.S. at 501, 511.  All that is required is that the complaint comply with "Rule 8(a)'s simplified pleading standard." *Id*. at 513.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (internal quotation marks omitted).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 Fed. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 Fed. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 Fed. App'x 506, 510 (6th Cir.

2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C. <u>Newberry's Claim Under Title VII</u>

The complaint fails to state a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, because the complaint only asserts discrimination based on "taking a prescription medicine," which is not an actionable basis for a discrimination claim under Title VII. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII does not cover disability discrimination claims. *Clark v. City of Dublin, Ohio*, 178 F.App'x 522, 524 (6th Cir. 2006). Nor does it cover claims based on taking a prescription medication.

D. <u>Newberry's Claim under the ADA</u>

Rather than a claim under Title VII, it appears from the

factual allegations in the complaint that Newberry is attempting to bring a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12100 *et seq.* The complaint, however, also fails to state a claim under the ADA. The ADA prohibits discrimination "against a qualified individual with a disability on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Disability" within the meaning of the ADA is defined as (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C). The ADA prohibits discrimination "because of" an employee's disability, meaning that the ADA prohibits discrimination that is the "but-for" cause of an employer's adverse decision. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012)(en banc).

The ADA was amended by the ADA Amendment Act of 2008 ("ADAAA"). The ADAAA altered the first definition of disability. It rejected the demanding definition for "substantially limits" that the Supreme Court had laid out in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197-199 (2002), that required an individual to be prevented or severely restricted from doing activities that are of central importance to most people's daily

lives.  Now, a less-demanding standard is applied to determine whether an individual suffers from an actual disability.  The regulations base the definition of "substantially limits" on how the individual functions as compared to the general population.  29 C.F.R. § 1630.2(j)(ii)(2011). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population . . . . [N]ot every impairment will constitute a disability within the meaning of this section." *Id.*

The ADAAA also expanded the third definition of disability - "regarded as having such an impairment."  Before the amendments, a plaintiff had to show that he or she was "regarded as" having an impairment that substantially limited a major life activity.  Under the amended definition, "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  The ADAAA also mandates that "[t]he definition of disability . . . shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A).

Newberry's complaint does not contain any allegations that she

is "disabled" or perceived as disabled within the meaning of the ADAAA. She merely states that she was taking a prescription medicine. She does not identify the medication or the underlying medical condition for which she was prescribed the medication. She does not allege that the underlying medical condition has resulted in a physical or mental impairment that substantially limits one or more life activities. Accordingly, Newberry fails to state a claim for disability discrimination under the ADA as amended by the ADAAA.

III. RECOMMENDATION

For the foregoing reasons, this court recommends that Newberry's complaint be dismissed *sua sponte* for failure to state a claim upon which relief can be granted.

Respectfully submitted this 3rd day of January, 2013.

s/ Diane K. Vescovo
Diane K. Vescovo
United States Magistrate Judge

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. FED. R. CIV. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.